### HOOK & EYE DEVICES CORPORATION v. BELFIT BRASSIERE CO.

### No. 3771.

District Court, E. D. New York.
July 23, 1931.

Edward M. Evarts, of New York City (Edward M. Evarts, Christopher C. Cousins, and Morris H. Wolsky, all of New York City, of counsel), for plaintiff.

Jeffery, Kimball & Eggleston, of New York City (Oscar W. Jeffery, of New York City, of counsel), for defendant.

GALSTON, District Judge.

This is a patent infringement suit in which infringement is charged of letters patent No. 1,603,246. The application was filed by Louis Rocke on November 17, 1921, and the patent issued October 12, 1926. The im-

provement has reference to both an apparatus and a method for sewing tapes provided with fastening devices on articles of wearing apparel.

Apparatus claims Nos. 1, 2, 9, 11, 12, 13, 15, 19, 22, 23, and 24, and method claim 18, are in issue. Defenses of want of invention and noninfringement are stoutly asserted.

The specification recites that it is the common practice in the garment trade to sew by machine a tape upon which, at suitable intervals, hooks or eyes have been secured directly upon the garment, in order to avoid the necessity of sewing each fastener separately to the garment. The old method, apparently, as described in the specification, involved two operations; first, sewing one edge of the tape to the edge of the garment, and then, by a separate or second operation, sewing the other edge of the garment to complete the matter of securing the tape in place. It was for the purpose of avoiding one of these operations that the apparatus and the method of the patent were devised.

The two-needle sewing machine of standard type with the usual work table and a pair of needles are employed. A presser foot 14 having apertures 13 through which the needles 12 pass is part of the apparatus. This presser foot when the machine is in operation is actuated by a spring pressed in the common and well-known way, downwardly in contact with the feed plate 15. This plate is provided with the usual serrations 16 to engage the fabric passing through the machine. The feed plate is likewise provided with the customary slotted openings through which the serrated jaws of the usual form of reciprocating feeder project.

The applicant says that, due to the presence of the presser foot between the needles and the pressure between the presser foot and feed plate, it has heretofore been impossible to feed a tape, upon which a number of fastening devices were secured, under the presser foot, so that both sides of the tape could be sewed simultaneously, for it is obvious that the fasteners could not pass between the presser foot and the feed plate.

To make possible this sewing of the tapes upon corsets, brassieres, and other garments in a single operation, the applicant devised a guiding means for the tape; and this is the essential feature of his device and method.

The work table of the machine is preferably slotted to receive a channel plate 26, the top of which is flush with the top of the table 11. The plate 26 is slotted to provide a guide

way 27 for the tape 20, and, midway between the edges of the guide way, it is slotted to a greater depth so as to provide a channel 28 of sufficient depth to permit the free passage of the fasteners 18.

The method pursued in the use of the apparatus is described as follows: "The tape is introduced into the channel plate 26 with the edges of the tape between the sides of the guideway 27 and the fasteners 18 facing downwardly and in the channel 28. From the channel plate the end of the tape is led under the cover plate 33 and over the serrations of the feed plate. The operator then introduces the edge of the garment into the hemmer 23 which turns the hem 22, the presser foot 14 is then lowered upon the goods which occupy the position shown clearly in Fig. 4. The sewing machine is then started and the goods passed through the machine."

It is thus seen that what Rocke broadly did was to provide a channel or groove of sufficient dimension to permit the passage of the tape with its hooks and eyes through the machine. The tape is engaged by the feed dog below and the presser foot above, and stitched in the usual manner.

The patentee had available a standard Singer sewing machine of the 112W115 type, and what he did in effect was to cut a channel in three of its parts, the throat plate, front plate, and feed dog. All of these were part of the machine as it was placed on the market in 1915.

To show that the provision of a channel or groove was old in the art, many patents were offered in evidence. Some of these were shown in the double needle type of sewing machine, as, for example, that to Eschner, No. 504,571; to Fogg, 555,476; and to Bewsic, 839,706.

In addition to the patent showing of the prior art, defendant established the use by the Singer Manufacturing Company of various attachments which it manufactured, illustrating the not uncommon expedient of grooving throat plates and feed dogs to permit the passage between the needles of objects that otherwise would obstruct the free operation of the machine. Such a device is that, for example, shown in the throat plate, Defendant's Exhibit K. The groove in the plate was designed to permit the free passage of the bone or reed of a corset beneath the presser foot. With this plate K, there was used a feed dog, Defendant's Exhibit L. Both of these parts were set forth in a price list of the Singer Manufacturing Company

as early as 1913. Defendant's Exhibit J is another Singer throat plate of the prior art, grooved for the purpose in hand, and adapted to receive a corresponding feed dog.

Singer Manufacturing Company also made Defendant's Exhibits S to I, inclusive, which are parts or attachments made in 1915 and 1916, and sold to the Ford Motor Car Company for the purpose of permitting the sewing of strip material, with metallic separable fasteners secured thereon, on a two-needle sewing machine having a groove or channel permitting free passage between the needles. This material consisted of a strip of leather having metal fasteners or pinch buttons attached to it, and were sewed to the folded edge of an automobile curtain.

The operation of the attachment was described by Mr. Waterman of the Singer Manufacturing Company:

"The object of this attachment is to lead this strip of material and the part of the main curtain, or whatever it may be, of an automobile in proper, to get those two pieces in proper alignment sideways with respect to each other to the needles so that the stitching when done will be as nearly an even distance from each side of this strip as is possible to do after the strip has been turned under a certain distance on each side. In this particular case it was turned under more on one side than on the other, fully ¾ of an inch on the right side and not over ⅜ on the left. This is an edge guiding folder, edge folder on the under side of the main material * * * and a strip folder, known as a strip folder on top. The two pieces come separately to the attachment. Perhaps I could show them by means of a paper separately, if so desired, how they are led to each part, if you wish. The under piece comes in here (indicating). The paper does not fold quite as readily as cloth would, but in that way it comes out; and if I were to hold it correctly it would come out all folded over in that way (indicating), as it does come out in the main strip of material just as you see, folded over in the same way. The upper strip is passed through. * * * "

"In the regular course of manufacture this strip would come in an even width, and you will see as that emerges in front it has been folded over on one side under, and on the other side, and on this side it is wider, due to the fact that it is made to do that. In other words this strip folder passes the work through so that as it emerges from it it is folded over on one side and on the other, and

if my material were exactly the right width it would be wider on this side than the other. In fact, it shows that here, although it is not to the exact degree that it should show it."

"As these come out they are presented to the needle, one above the other. This should be inside the folder, but put one above the other in this way (indicating), and the needles are located right ahead here, and they stitch through this, stitch that up in two parallel rows of stitches, and that is the finished result we have here just as that comes out there. Is that complete? * * * "

"The strips which are flat, are this width and flat when they are presented to this strip folder, have these fasteners attached to them that have been previously attached. * * * "

"And they are guided through by means of this clearance groove, they are allowed to pass through this guide. That is the purpose of this open space."

Moreover, on the subject-matter of the method claim of the patent, the defendant shows in the Singer pamphlet of 1914 illustrations indicating that the wide tape, from a coil below the bed of the machine, is passed through a guide to a point where the needles pass down through the presser foot, as was testified by Mr. Waterman. It will be observed that this machine is provided with two needles. The material or garment, said Mr. Waterman, which is on top of the tape, has its edge turned over by means of the folder, and, by means of the two needles, is stitched to and along the edges of the wide tape; and Mr. Waterman said: "There is a die for the tape which is shown on top of the webbing which lies underneath it. The two are both guided as you can see through guides which lead to the point where the needles pass down through the presser foot. It is always necessary in all sewing work to lead work, no matter what it may be, whether it be strips of material, or any material, directly to the needles in the way in which you wish to have the stitching done."

I do not think that it involved invention to adapt the devices of the prior art to the standard sewing machine known to Rocke. What he did was the work of a skillful mechanic, but I cannot believe that it amounted to invention. Hollister v. Benedict Manufacturing Co., 113 U. S. 59, 5 S. Ct. 717, 28 L. Ed. 901; Concrete Appliances Co. v. Gomery, 269 U. S. 177, 46 S. Ct. 42, 70 L. Ed. 222.

As to the method claim, in addition to lack of novelty, I think it has the infirmity of expressing at most the function of the machine. Risdon Iron & Locomotive Works v. Medart, 158 U. S. 68, 15 S. Ct. 745, 39 L. Ed. 899.

Holding as I do that all of the claims lack invention, it is not necessary to discuss the question of infringement, nor the defense raised by the Bogdonoff-Rocke interference.

The defendant may have a decree in accordance with the foregoing opinion dismissing the complaint.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.